IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SARAH PATTON, ERICA KITTS, and MARILEE HARRISON, individually and on behalf of all similarly-situated persons, | ) ) ) | |
| | ) | Civil No.: _____ |
| Plaintiffs, | ) | |
| | ) | CLASS AND COLLECTIVE |
| | ) | ACTION COMPLAINT |
| v. | ) | |
| | ) | |
| SERVICESOURCE DELAWARE, INC. | ) | |
| d/b/a SERVICESOURCE | ) | JURY TRIAL DEMAND |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1.     Plaintiffs Sarah Patton, Erica Kitts and Marilee Harrison (collectively, "Plaintiffs") bring this lawsuit on behalf of themselves and all similarly situated individuals as a collective action under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") and for breach of contract and unjust enrichment under Tennessee law pursuant to Rule 23 of the Federal Rules of Civil Procedure against ServiceSource Delaware, Inc., d/b/a ServiceSource International Inc. (hereinafter referred to as "ServiceSource," the "Company" or "Defendant"). Plaintiffs seek to recover unpaid wages owed to them and all other similarly situated employees who have worked at Defendant's Nashville, Tennessee office, and were employed or hired as, or holding a position titled Sales Account Representatives, at any time within the six years before the filing of this lawsuit.

2.     Other current and former employees of Defendant are also entitled to receive their proper hourly unpaid wages and/or overtime compensation for the reasons alleged in this Complaint.  The Representative Plaintiffs are permitted to maintain this action "for and on behalf of . . . themselves and other employees similarly situated."  29 U.S.C. §216(b).

3.     During the three-year period prior to the filing of this Complaint, Defendant committed violations of the FLSA by requiring and/or suffering or permitting their non-exempt employees to routinely work more than forty (40) hours per week without payment of overtime compensation.

4.     Plaintiffs and all similarly-situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

5.     During the six-year period prior to the filing of this Complaint, Defendant breached its contracts with its employees in its Nashville, Tennessee office that were hired as hourly (i.e., non-exempt) employees by failing to pay them for all hours they worked.

6.     As a result of Defendant's failure to properly compensate its hourly (i.e. non-exempt) employees for work performed in its Nashville, Tennessee office, Defendant was unjustly enriched.

**THE PARTIES**

**THE PLAINTIFFS**

7.     Plaintiff Sarah Patton currently resides in Nashville, Tennessee, and is a citizen of the United States.  Plaintiff Patton was employed by Defendant from October 8, 2012 through June 17, 2015.

2

8.      According to Plaintiff Patton's October 1, 2012 Offer of Employment letter from Defendant, she was hired with the title of Sales Account Representative. She was classified as a "non-exempt employee" with an hourly wage of thirteen dollars and forty-seven cents ($13.47), equaling an annual salary of Twenty-Eight Thousand Dollars ($28,000). She was also eligible for an incentive bonus. Attached to this Complaint as Exhibit A is a copy of Plaintiff Patton's Offer of Employment letter.

9.      Plaintiff Patton's hourly wage periodically increased during her tenure as an employee for the Defendant. At the time of her resignation, Plaintiff Patton's compensation was sixteen dollars and thirty-five cents ($16.35), equaling an annual salary of Thirty-Four Thousand Dollars ($34,000). This figure does not include bonuses.

10.     Throughout her employment by Defendant, Plaintiff Patton worked as a non-exempt customer service representative on Defendant's WebEx team in Defendant's Nashville, Tennessee office with the title of Customer Success Manager. Plaintiff Patton was entitled to overtime pay for all hours worked in excess of forty (40) in each workweek at an overtime rate of one-and-one-half (1½) times her regular rate of pay throughout her tenure as an employee for Defendant.

11.     Plaintiff Patton's scheduled shift varied during her tenure as an employee for Defendant:

        A.      From October 2012 to October 2014, her scheduled shift began at 8:00 a.m. and ended at 5:00 p.m.; and,

        B.      From October 2014 to June 2015, her scheduled shift began at 7:00 a.m. and ended at 4:00 p.m.

3

12.     Even though she was non-exempt and worked overtime hours during her employment, Defendant failed to pay Plaintiff Patton her lawful overtime compensation as required by the FLSA.

13.     Even though Plaintiff Patton had a signed contract with Defendant saying she was an hourly employee, she was not paid for all hours she worked during her employment with ServiceSource.

14.     Plaintiff Erica Kitts currently resides in Los Angeles, California, and is a citizen of the United States.  Plaintiff Kitts was employed by Defendant from approximately July 25, 2011, through May 28, 2014.

15.     Upon information and belief, Plaintiff Kitts' hourly wage when she started her employment with Defendant was thirteen dollars and forty-seven cents ($13.47), equaling an annual salary of Twenty-Eight Thousand Dollars ($28,000).  Upon information and belief, Plaintiff Kitts' hourly wage at the time of her resignation was sixteen dollars and thirty-five cents ($16.35), equaling an annual salary of Thirty-Four Thousand Dollars ($34,000).  This figure does not include bonuses.

16.     Upon information and belief, Plaintiff Kitts signed an Offer of Employment letter from ServiceSource for a position with the title of Sales Account Representative substantially similar to the document signed by Plaintiff Patton attached as Exhibit A to this Complaint.  According to the terms of that agreement, Plaintiff Kitts was a non-exempt, hourly employee.

17.     Plaintiff Kitts worked as a non-exempt customer service representative on Defendant's WebEx team in Defendant's Nashville, Tennessee office with the title of Customer Success Manager.  Plaintiff Kitts was entitled to overtime pay for all hours worked in excess of

4

forty (40) in each workweek at an overtime rate of one-and-one-half (1½) times her regular rate of pay throughout her tenure as an employee for Defendant.

18.  Plaintiff Kitts' scheduled shift during her tenure as an employee for Defendant was 8:00 a.m. to 5:00 p.m.

19.  Even though she was non-exempt and worked a number of overtime hours, Defendant failed to pay Plaintiff Kitts her lawful overtime compensation as required by the FLSA.

20.  Even though Plaintiff Kitts had a signed contract with Defendant saying she was an hourly employee, she was not paid for all hours she worked during her employment with ServiceSource.

21.  Plaintiff Marilee Harrison currently resides in Nashville, Tennessee and is a citizen of the United States. Plaintiff Harrison was employed by Defendant from approximately February 23, 2013, through March 25, 2015.

22.  Upon information and belief, Plaintiff Harrison's hourly wage when she started her employment with Defendant was thirteen dollars and forty-seven cents ($13.47), equaling an annual salary of Twenty-Eight Thousand Dollars ($28,000). Upon information and belief, Plaintiff Harrison's hourly wage at the time of her resignation was sixteen dollars and thirty-five cents ($16.35), equaling an annual salary of Thirty-Four Thousand Dollars ($34,000). This figure does not include bonuses.

23.  Upon information and belief, Plaintiff Harrison signed an Offer of Employment letter from ServiceSource for a position with the title of Sales Account Representative substantially similar to the document signed by Plaintiff Patton attached as

5

Exhibit A to this Complaint. According to the terms of that agreement, Plaintiff Harrison was a non-exempt, hourly employee.

24. Plaintiff Harrison was a non-exempt administrative assistant supporting outside sales representatives on Defendant's WebEx team in Defendant's Nashville, Tennessee office. Plaintiff Harrison was a member of the High Performance Sales Team. Plaintiff Harrison was entitled to overtime pay for all hours worked in excess of forty (40) in each workweek at an overtime rate of one-and-one-half (1½) times her regular rate of pay.

25. Plaintiff Harrison's scheduled shift varied during her tenure as an employee for Defendant:

A. From February 2013 to October 2013, her scheduled shift began at 8:00 a.m. and ended at 5:00 p.m.;

B. From October 2013 to March 2014, her scheduled shift began at 7:00 a.m. and ended at 4:00 p.m.; and,

C. From March 2014 to March 2015, her scheduled shift began at 8:00 a.m. and ended at 5:00 p.m.

26. Even though she was non-exempt and worked a number of overtime hours, Defendant failed to pay Plaintiff Harrison her lawful overtime compensation as required by the FLSA.

27. Even though Plaintiff Harrison had a signed contract with Defendant saying she was an hourly employee, she was not paid for all hours she worked during her employment with ServiceSource.

28. At all times material to this action, the Plaintiffs and all similarly-situated members of this collective action were "employees" of the Defendant as defined by §203(e)(1)

of the FLSA, and worked for Defendant within the territory of the United States within the three-year period preceding the filing of this lawsuit. Further, these same individuals were and/or are covered by §207 of the FLSA throughout their employment by Defendant.

29.     Upon information and belief, all individuals who were hired employed or hired as, or holding a position titled Sales Account Representatives in Defendant's Nashville, Tennessee office signed Offer of Employment letters from ServiceSource substantially similar to the document signed by Plaintiff Patton attached as <u>Exhibit A</u> to this Complaint. According to the terms of those agreements, all such individuals were non-exempt, hourly employees.

## THE DEFENDANT

30.     Defendant is a Delaware corporation that is authorized to and does business in many states, including Tennessee, as "ServiceSource." Defendant's corporate headquarters is located at 634 2nd Street, San Francisco, California 94107-2015. Defendant has offices throughout the United States, including an office with approximately eight hundred (800) employees at 201 4th Avenue, North, Nashville, Tennessee 37219-2011.

31.     Defendant can be served through its registered agent, CT Corporation System located at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

32.     On its website, Defendant describes itself as "the world's leading B2B companies with expert managed services, best-practice processes, and cloud software proven to increase customer success, drive revenue growth and decrease churn from existing customers. ServiceSource's solutions help companies with onboarding and adoption, upsell and cross-sell, retention and renewals—across the entire revenue lifecycle."

33.     Defendant is subject to personal jurisdiction in the state of Tennessee for purposes of this lawsuit.

7

34. At all times material to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA, and have maintained a gross volume of sales in excess of $500,000.

35. At all times material to this action, Defendant had been the "employer" of the Plaintiffs as defined by §203(d) of the FLSA throughout their employment, as well as the employer of all other persons similarly situated to the Plaintiffs.

36. The overtime provisions set forth in §207 of the FLSA apply to Defendant.

## JURISDICTION AND VENUE

37. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); and 29 U.S.C. §§201, *et seq.* (FLSA).

38. This Court also has supplemental jurisdiction over Plaintiffs' state law breach of contract and unjust enrichment claims under 28 U.S.C. §1367 because the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

39. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

40. Defendant has intentionally and repeatedly engaged in a practice of improperly and unlawfully failing to pay their non-exempt employees including, but not limited to, the Plaintiffs and the collective group of similarly-situated employees who worked at Defendant's Nashville, Tennessee location for work performed in violation of the provisions of the FLSA and corresponding federal regulations.

41. Specifically, Defendant demanded that Plaintiffs, and those similarly situated to Plaintiffs, perform and/or complete more work than is and/or was humanly possible to accomplish during their regular scheduled shifts. For instance, non-exempt employees holding

8

customer service positions such as Plaintiffs Patton and Kitts were expected to assist customers beyond their shifts, including, but not limited to, technical support, answering billing questions or training customers on the WebEx system. Plaintiff Harrison was similarly asked to work through lunch or beyond her scheduled shift without being compensated for her time.

42. Defendant's employee handbook, revised as recently as August 2013 states that "[non-exempt] employees are required to be paid overtime for all overtime hours worked," and that "[t]he Company provides compensation for all overtime hours worked by nonexempt employees in accordance with state and federal law."

43. Plaintiffs, and other hourly-paid, non-exempt employees similarly situated to Plaintiffs, frequently performed work both before and after their scheduled shifts at work; during their so-called "lunch" breaks; and while at their personal homes and places of residence, for all of which they received no compensation from Defendant, much less lawful overtime pay.

44. At all times material to this action, Defendant had knowledge of and was fully aware that Plaintiffs, and other hourly-paid, non-exempt employees similarly situated to Plaintiffs in Defendant's Nashville, Tennessee office, routinely worked more than forty (40) hours per week without payment of overtime compensation.

45. Plaintiff Patton consistently worked in excess of forty (40) hours in each workweek between December 2013 and September 2014 while she was responsible for approximately 650 accounts in California.

46. As evidenced by the emails delineated below, Plaintiff Patton frequently worked past her scheduled shift on numerous occasions during her time as an employee of Defendant, including:

9

A.      February 5, 2014 at 10:16 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

B.      February 7, 2014 at 8:38 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

C.      April 1, 2014 at 6:31 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

D.      June 2, 2014 at 5:51 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

E.      June 12, 2014 at 5:51, Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

F.      July 14, 2014 at 6:38 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

G.      July 24, 2014, email from Plaintiff Patton's manager to other ServiceSource employees stating that Plaintiff Patton "stayed late last night to do a PCN test call with a customer that was on the fence";

H.      September 4, 2014 at 6:26 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

I.       September 4, 2014 at 6:55 p.m., Plaintiff Patton sent an email to a customer; her shift ended at 5:00 p.m.;

Attached to this Complaint as <u>Exhibit B</u>[1] is a copy of the emails set forth above.  These emails were all sent from ServiceSource computers by Plaintiff Patton while she was at work.  In each of the workweeks in which the above-mentioned activities occurred, upon information and

---

1        Contemporaneously with the filing of this Complaint, Plaintiffs filed a Motion for Leave to File Select Exhibit to Complaint Under Seal. <u>Exhibit B</u> is one of these select Exhibits.

belief, Plaintiff Patton worked in excess of forty (40) hours and was not paid overtime compensation.  The dates encompassed by the listed emails is not exhaustive of all instances in which Plaintiff Patton worked in excess of forty (40) hours in a workweek.  Plaintiff Patton was not paid overtime compensation in any workweek during her employment, despite working overtime on numerous occasions.

47.     Plaintiff Harrison consistently worked in excess of forty (40) hours in a workweek during her employment, but was never paid any overtime compensation.

48.     Defendant was aware and even encouraged Plaintiff Harrison to work hours in addition to her scheduled shift time.  For example:

A.     In August 2013, Plaintiff Harrison worked one evening until approximately 7:00 p.m.  She emailed her manager informing him that she had stayed late and asked for compensation time.  The manager responded by saying ServiceSource did not give compensation time but that they allowed employees to take breaks and run errands during the day without penalizing them.

B.     In February 2014, during a winter storm, Plaintiff Harrison was specifically asked by her manager to work after her shift ended.  Plaintiff Harrison was at home when her manager called and asked her to return to the office to assist with an emergency situation involving a California sales representative. Due to the inclement weather, Plaintiff Harrison asked her manager if she could work from home.  The manager set up remote access and Plaintiff Harrison worked for over five (5) hours for which she was not compensated.

The above-referenced examples are not exhaustive of all instances when Plaintiff Harrison worked in excess of forty (40) hours in a workweek.  Plaintiff Harrison was not paid overtime

compensation in any workweek during her employment, despite working overtime on numerous occasions.

49.     Plaintiff Kitts consistently worked in excess of forty (40) hours in a workweek during her employment, but was never paid any overtime compensation.  Specifically, between February 2012 and September 2012 and January 2013 and May 2013 while she was responsible for between 500 and 600 accounts, and then again between March 2014 and May 2014 when she was responsible for the "high dollar" account base, Plaintiff Kitts routinely worked in excess of forty (40) hours.   These timeframes are not exhaustive of all instances when Plaintiff Kitts worked in excess of forty (40) hours in a workweek.   Plaintiff Kitts was not paid overtime compensation in any workweek during her employment, despite working overtime on numerous occasions.

50.     Upon information and belief, Defendant overtly encouraged, sanctioned, authorized and/or requested its employees to work off the clock in the following ways:

A.     Defendant's managers would send emails to all Nashville employees recognizing specific achievements.  An email from a manager dated March 3, 2015, with the subject line: "2014 Nashville Above & Beyond Award Winners" recognized an employee on Plaintiffs' team for "arriv[ing] early and stay[ing] late to ensure no customer goes unanswered."   Upon information and belief, this employee was not paid overtime for working beyond her shift.   This email supports Plaintiffs' allegation that Defendant knew, authorized and encouraged, and suffered and permitted employees to work more than forty (40) hours per

12

week without payment of overtime compensation.  Attached to this Complaint as Exhibit C[2] is a copy of this email.

B.       The same March 3, 2015 email sent to all Nashville employees noted that another employee "has received continuous recognition from the client ***and is always willing to work after hours if needed***" (emphasis added).   Upon information and belief, this employee was not paid overtime for working "after hours."     This email supports Plaintiffs' allegation that Defendant knew, authorized and encouraged, and suffered and permitted employees to work more than forty (40) hours per week without payment of overtime compensation.

C.       An email from a supervisor dated March 31, 2015, with the subject line: "It pays to be awesome!", was sent to Plaintiffs' team and recognized a team member for "**Field[ing] internal and external calls until <u>10:00 pm</u> one night to ensure the issue was properly handled**" (emphasis in original). This employee was nominated for a chance to win a ticket to a Nashville Predators hockey game. Upon information and belief, this employee was not paid overtime for working beyond his shift.  This email supports Plaintiffs' allegation that Defendant knew, authorized and encouraged, and suffered and permitted employees to work more than forty (40) hours per week without payment of overtime compensation. Attached to this Complaint as Exhibit D[3] is a copy of this email.

D.       During the period material to this action, Plaintiffs, and those similarly situated to Plaintiffs, were often unable to take a lunch break, or a full

---

2        Contemporaneously with the filing of this Complaint, Plaintiffs filed a Motion for Leave to File Select Exhibit to Complaint Under Seal. <u>Exhibit C</u> is one of these select Exhibits.

3        Contemporaneously with the filing of this Complaint, Plaintiffs filed a Motion for Leave to File Select Exhibit to Complaint Under Seal. <u>Exhibit D</u> is one of these select Exhibits.

uninterrupted lunch break; Defendant, however, automatically deducted a one hour lunch break from their hours worked whether they were able to take it or not.

E.     In an April 14, 2015 email, a manager encouraged WebEx team members to add their Cisco email and calendars to their cellular telephones saying it would be "extremely helpful in getting in front of urgent escalations and managing your Out of Office when faced with unexpected events causing you to be out (inclement weather, sickness, etc)." This email confirms members of Defendant's management team encouraged, implicitly authorized, and suffered and permitted employees to work more than forty (40) hours per week without payment of overtime compensation. Attached to this Complaint as Exhibit E is a copy of this email.

51.     Defendant concealed from Plaintiffs, and other hourly-paid, non-exempt employees similarly situated to Plaintiffs, that they were entitled to overtime compensation under the FLSA. Defendant misled Plaintiffs, and other hourly-paid, non-exempt employees similarly situated to Plaintiffs working in Defendant's Nashville, Tennessee office, into believing they were salaried employees. In fact, Plaintiff Kitts was told by a manager in approximately August 2014, several months after she had resigned from the Company, something to the effect of, "You all think you are salaried, but you are hourly."

52.     In contravention of Defendant's own employee handbook, Plaintiffs, and other hourly-paid, non-exempt employees similarly situated to Plaintiffs working in Defendant's Nashville, Tennessee office, were not required or expected to maintain time-sheets recording their hours worked.

14

53.     Defendant did not employ a timekeeping system that captured the time its employees in the Nashville, Tennessee office would spend working each day, as defined by the FLSA until June 29, 2015.

54.     On February 12, 2015, an email was sent from US Payroll (USPayroll2@servicesource.com) to all Defendants' US employees, Subject: "COMING SOON! – Workday Time Tracking & Pay Cycle Change."   In the email, Defendant announced a new time tracking system whereby "Time for hours worked and overtime will be entered online daily and submitted weekly in Workday (**beginning June 29, 2015**) replaced the current excel spreadsheets (OT)" (emphasis in original).  Attached to this Complaint as Exhibit F is a copy of this email.

55.     In a document circulated to ServiceSource employees following the announcement of the new time tracking procedures, the following was included in the FAQs section:

> **Q: Why do US nonexempt employees report actual hours worked?**
>
> A:  FLSA regulations require nonexempt employees to track their hours worked so they can be paid overtime for work in excess of 40 hours per week.  To ensure ServiceSource meets these regulations, nonexempt employees are required to report their actual time worked each day.  Workday Time Tracking is designed specifically to track hours worked and overtime.

Attached to this Complaint as Exhibit G is a copy of this document.

56.     Based upon information and belief, Defendant's new time tracking policy was enacted because it knew its employees were working time for which they were not being compensated in violation of the FLSA.  Defendant made no attempt to remediate or compensate its employees for the uncompensated time they worked before the effective date of this policy.

15

57.     At a minimum, Defendant "suffered or permitted" Plaintiffs and all other similarly-situated employees to work without proper compensation in violation of the FLSA and clear regulatory provisions and guidelines applicable to Defendant's operations.

58.     Defendant had an affirmative duty to ensure compliance with the FLSA, and to ensure that the unlawful practices and/or policies set forth above did not occur.  29 C.F.R. §785.11 provides in pertinent part that "[w]ork not requested but suffered or permitted is work time.  For example, an employee may voluntarily continue to work at the end of the shift. . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."  Moreover, 29 C.F.R. §785.13, titled "Duty of Management," provides in pertinent part that "[i]n all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them."

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-58 herein.  By its actions alleged herein, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

60.     Upon information and belief, there are numerous other similarly-situated present and former employees of Defendant who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of court-supervised notice of the present lawsuit.  Those similarly-situated employees are known to Defendant and are readily identifiable and locatable through Defendant's records.

61.     Plaintiffs assert their FLSA claims pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the following opt-in collective class members:

All current and former hourly-paid, non-exempt employees at Defendant's Nashville, Tennessee office, for the three years preceding the filing of this lawsuit, who were employed or hired as, or holding a position titled Sales Account Representatives, who performed uncompensated work activities related to Defendant's services, as a result of Defendant's common policy or practice alleged herein (the "Collective Class.").

62.     Plaintiffs seek to pursue their claims on behalf of all individuals who opt into this action pursuant to 29 U.S.C. §216(b).

63.     Plaintiffs and the Collective Class are "similarly situated" as that term is defined in 29 U.S.C. §216(b) because, *inter alia*, Defendant did not pay for all hours worked, as mandated by the FLSA.

64.     All, or virtually all, of the legal and factual issues that will arise in litigating these collective action claims are common to Plaintiffs and the Collective Class. These issues include: 1) whether and to what extent Defendant did not pay for all hours worked, 2) whether and to what extent these unpaid hours include hours worked over forty (40) in a week, and 3) whether and to what extent such overtime hours were compensated at one and one-half times the regular rate of pay.

## CLASS ACTION ALLEGATIONS UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

65.     Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following individuals:

All current and former hourly-paid, non-exempt employees at Defendant's Nashville, Tennessee office, for the six years preceding the filing of this lawsuit, who were employed or hired as, or holding a position titled non-exempt Sales Account Representatives and performed uncompensated work activities related to ServiceSource's services, as a result of Defendant's common policy or practice alleged herein (the "Rule 23 Class.").

66.     Plaintiffs are members of the class they seek to represent.

17

67.     The Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

68.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Fed. R. Civ. P. 23(a)(2).  Specifically, all members of the Rule 23 Class share the questions of: 1) whether and to what extent Defendant did not pay for all hours worked, 2) whether and to what extent these unpaid hours include hours worked over forty (40) in a week, 3) whether and to what extent such overtime hours were compensated at one and one-half times the regular rate of pay, 4) whether Defendant's actions constituted a breach of contract, and 5) whether Defendant's actions constituted unjust enrichment.

69.     Plaintiffs' claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3).  Defendant's failure to pay for all time worked was not the result of any Plaintiff-specific circumstances.  Rather, it arose from Defendant's common payroll policies, which Defendant applied to all employees at Defendant's Nashville, Tennessee office employed or hired as, or holding a position titled Sales Account Representatives.

70.     Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.  Further, Plaintiffs have retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Fed. R. Civ. P. 23(b)(2).

71.     By consistently failing to pay its employees for all hours worked, Defendant has created a scenario where questions of law and fact common to Rule 23 Class members predominate over any questions affecting only individual members.  Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter.

18

Accordingly, Plaintiffs are entitled to pursue their claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

<u>**FIRST CAUSE OF ACTION:**</u>
**(VIOLATION OF THE FAIR LABOR STANDARDS ACT)**

72.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-71 herein.  Based on actions alleged herein, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

73.     Defendant willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by endeavoring to prevent the proper compensation of Plaintiffs and other present and former, similarly-situated employees in accordance with §207 of the FLSA.

74.     Plaintiffs, as well as all similarly-situated employees, were victims of a uniform and facility-wide compensation policy and/or practice that failed to record and compensate all time worked by employees in Defendant's Nashville, Tennessee office.

75.     The uncompensated time at issue is the time worked in excess of forty (40) hours per week.

76.     The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours worked over forty (40) in a week.  *See* 29 U.S.C. §207.

77.     Defendant has violated the FLSA by failing to compensate Plaintiffs and the Collective Class on a daily basis for all time worked, including overtime.

78.     As a result of Defendant's violations of the FLSA, Plaintiffs, as well as all others similarly situated, have suffered damages by failing to receive their lawful overtime wages in accordance with §207 of the FLSA.

19

79.    Defendant made no good faith effort to comply with the FLSA with respect to the unlawful practices and/or policies to which it subjected Plaintiffs or other similarly-situated employees.

80.    Defendant willfully violated the FLSA by failing to pay its employees their lawful overtime wages in accordance with §207 of the FLSA.

81.    Pursuant to 29 U.S.C. §216(b), attached to and filed with this Complaint as Exhibit H are the Consents to Become Party Plaintiff signed by the above-named Representative Plaintiffs.

**SECOND CAUSE OF ACTION:**
**(BREACH OF CONTRACT)**

82.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-81 herein.

83.    Plaintiffs bring this claim on behalf of all members of the proposed class.

84.    Plaintiffs and the class members entered into employment agreements with Defendant whereby they agreed to perform work for Defendant in exchange for being compensated for all time worked.

85.    The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration.

86.    Plaintiffs and the class members have performed all conditions precedent, if any, required of them under these agreements.

87.    Defendant failed and refused to perform their obligations in accordance with the terms and conditions of the agreement by failing to pay Plaintiffs and the class member for all time worked on behalf of Defendant.

## THIRD CAUSE OF ACTION:
## (UNJUST ENRICHMENT)

88.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-87 herein.

89.     Plaintiffs bring this claim on behalf of all members of the proposed classes.

90.     Defendant is obligated to pay Plaintiffs and the class members for all time worked under Tennessee law.

91.     Because of the wrongful activities described above, including the failure to pay wages owed, Defendant has received the benefit of Plaintiffs' and the class members' unpaid labor and have therefore received money belonging to the Plaintiffs and the classes.

92.     Defendant was aware of and appreciated the benefit Plaintiffs and similarly situated employees conferred on them.

93.     Defendant has been unjustly enriched as a result of its accepting the work of Plaintiffs and the classes without proper compensation for all time worked.  It would be unjust to allow Defendant to enjoy the fruits of such employees' labor without proper compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.      An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b) and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Prompt notice, pursuant to 29 U.S.C. §216(b) and Rule 23 of the Federal Rules of Civil Procedure, of this litigation to all potential members of the Collective Class and the Rule 23 Class;

C.    A judgment against Defendant and in favor of Plaintiffs, and those they seek to represent, for compensation for all unpaid and underpaid wages that Defendant has failed and refused to pay in violation of the FLSA and/or Tennessee law;

D.    Prejudgment interest to the fullest extent permitted under the law;

E.    Liquidated damages to the fullest extent permitted under the FLSA;

F.    Litigation costs, expenses, and Plaintiffs' attorneys' fees to the fullest extent permitted under the FLSA; and

G.    Such other, further legal and equitable relief, including but not limited to, any injunctive and/or declaratory relief to which they may be entitled.

Submitted: September 21, 2015.


                              DICKINSON WRIGHT PLLC

                              By:    */s/ Martin D. Holmes*
                                     Martin D. Holmes, #12122
                                     Joshua L. Burgener, #29077
                                     Robert C. Caldwell #29084
                                     Joseph K. McKinney #30537
                                     424 Church Street, Suite 1401
                                     Nashville, TN 37219
                                     (615) 244-6538

                                     Attorneys for Plaintiffs


NASHVILLE 65755-1 541472v5