UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SARAH PATTON, ERICA KITTS, AND MARILEE HARRISON, individually and on behalf of all similarly-situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 3:15-01013 Judge Sharp |
| SERVICESOURCE DELAWARE, INC. d/b/a SERVICESOURCE INTERNATIONAL, INC. | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion to Conditionally Certify This Matter as a Collective Action and for Approval of 29 U.S.C. § 216(b) Notice (Docket No. 26), to which Defendant has responded in opposition (Docket No. 37), and Plaintiff has replied (Docket No. 45). For the reasons that follow, Plaintiffs' request for conditional certification will be granted.

**I.**

Plaintiffs Sarah Patton, Erica Kitts, and Marilee Harrison are all former employees of Defendant Service Source Delaware who worked as "Sales Account Representatives" in its Nashville, Tennessee office. That office is one of several in the United States, and employs approximately 800 people.

Claiming they were not paid for all hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Tennessee common law, Plaintiffs ask this Court to conditionally certify this case as a collective action and approve issuance of court-supervised notice

1

under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). That request is made on behalf of the following putative opt-in plaintiffs:

> All current and former hourly-paid employees at ServiceSource's Nashville, Tennessee office, who, at any time since September 21, 2012, were employed or hired as, or held the position of "Sales Account Representatives."

(Docket No. 26 at 1).

In support of the Motion, each Plaintiff has filed a declaration. Those declaration state that Plaintiff Patton worked for Service Source at its Nashville office from October 8, 2012, through June 17, 2015; Plaintiff Kitts from July 25, 2011, through May 28, 2014; and Plaintiff Harrison from February 28, 2013, through March 25, 2015. While all three were hired as hourly, non-exempt employees and were scheduled for forty hour workweeks, each claims that they regularly worked beyond their stop times, yet did not receive overtime compensation. This extra work included, but was not limited to, providing technical support, answering billing questions, or training customers on the WebEx system

According to Plaintiffs, Defendant did not maintain a timekeeping system that captured the time its employees worked in the Nashville office. They also claim that Defendant concealed from them that they were entitled to overtime compensation for hours worked in excess of 40 hours per workweek. They further contend that Defendant's managers actually authorized and encouraged non-exempt employees to work off the clock, with Plaintiff Harrison claiming that her manager stated that while Defendant did not provide overtime pay, it allowed employees to take breaks and run errands during the day without penalty.

Plaintiffs contend that they were not alone in failing to receive the pay to which they were entitled. Rather, other Salary Account Representatives in the Nashville office regularly worked in

excess of forty hours per week without being compensated for the time they worked. This suggestion of uncompensated times seems to be supported by documents filed under seal with the Complaint that shows hourly employees arriving early or staying late.

## II.

Section 207(a) of the FLSA generally requires that employers pay employees specified hourly rates for up to 40 hours per week and pay overtime compensation of one and one-half times the regular rate for hours worked in excess of 40 hours. 29 U.S.C. § 207. Enforcement of this provision is authorized through collective actions brought by an employee on his own behalf and all those who are "similarly situated" and who "opt-in" by giving consent in writing to become a party. 29 U.S.C. § 216(b).

### A.

As a preliminary matter, Defendant asked that this Court stay ruling on the request for conditional certification, pending the Supreme Court's decision in Tyson Foods, Inc. v. Bouaphakeo. However, and after the finalization of the briefing in this case, the Supreme Court issued its opinion. Conditional certification was not at issue in Bouaphakeo; in fact, it is mentioned only one time in the decision, and then only for the proposition that "while a class under Rule 23 includes all unnamed members who fall within the class definition, the 'sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court.'" 136 S. Ct. 1036 (2016). Beyond that, Bouaphakeo offers Defendant little help at the conditional certification stage because the Court's holding was that employees can rely on representative evidence to determine the number of additional hours worked where (as alleged here) the employer fails to keep

3

adequate records.

**B.**

Turning to the merits, Defendant "submits that Plaintiffs have failed to make the requisite **factual showing** that there is a common policy or practice that **actually violates** the FLSA." (Docket No. 37 at 6, emphasis in original). Although claiming to be "cognizant that courts are hesitant to get into a detailed analysis of the merits of the case at the conditional certification stage," Defendant insist that "Plaintiffs must present factual evidence to this Court that a violation of the FLSA has occurred," and that "unsupported, conclusory allegation" (id.at 6-7) will not do.

No doubt, for the collective action to continue, it will be incumbent upon Plaintiffs to prove, not only that an FLSA violation occurred, but also that this was as a result of a common practice or policy of Defendant. But the time for making that showing is not now.

Essential to a collective action is that the employees be "similarly situated," and courts considering this question generally utilize a two-stage process. The first stage occurs early on in the litigation process (usually before the commencement of formal discovery) and, at this stage, a "'fairly lenient standard'" is employed "in determining whether plaintiffs are similarly situated" such that a class should be conditionally certified. White v. Baptist Memorial Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012) (citation omitted). At the second stage (which usually occurs after the completion of discovery), "courts apply a 'stricter standard' and more closely examine 'the question of whether particular members of the class are, in fact, similarly situated.'" Id. at 878. Thus, while the "fairly lenient standard" typically leads to conditional class certification, it is "'by no means final.'" Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546-47 (6th Cir. 2006) (citation

4

omitted).

Lead plaintiffs bear the burden of showing that opt-in plaintiffs are substantially similar. Frye v. Baptist Memorial Hospital, Inc., 495 Fed. App'x 669, 672 (6th Cir. 2012). That term is not defined in the statute, but the Sixth Circuit "tacitly approved," id., three factors in O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567 (6th Cir. 2009) that a court may utilize when exercising its discretion in determining whether certification is appropriate. Those factors are "'the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action.'" Id. at 584.

In O'Brien, the Sixth Circuit did "not purport to create comprehensive criteria for informing the similarly-situated analysis," id. at 585, but it did make several salient observations that guide this Court's consideration. "Showing a "unified' policy is not required," and, unlike Fed. R. Civ. P. 23(b), just because individualized issues may predominate, this does not necessarily mean that a collective action is inappropriate. Id. at 584. On the other hand, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." Id. at 585. Also, plaintiffs can be similarly situated where "their claims [a]re unified by common theories of defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id.

As noted already, the standard at the preliminary stage is "fairly lenient," requiring Plaintiff to make "'a modest factual showing'" that "'typically results in conditional certification of a representative class.'" Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (quoting,

Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 594 (S.D. Ohio 2002); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp.2d 493, 497 (D.N.J.2000)). Indeed, a plaintiff "must simply 'submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist.'" Shabazz v. Asurion Ins. Serv., 2008 WL 1730318, at *3 (M.D. Tenn. Apr. 10, 2008)(quoting, Olivo v. GMAC Mortgage Corp., 374 F. Supp.2d 545, 548 (E.D. Mich. 2004)). "If the named plaintiffs show that employees in the proposed class are similarly situated, '[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit.'" Simpson v. Caresouth Hha Holdings, LLC, 2016 WL 3349637, at *3 (M.D. Tenn. June 16, 2016) (quoting Comer, 454 F.3d at 546).

Here, the Court exercises its discretion by granting collective action status and authorizing the issuance of notice based upon the declarations submitted by Plaintiffs and the documents attached to the Complaint. Those suggest that Plaintiffs were regularly required to work more than 40 hours per week without proper compensation, that others were required to do the same, that Defendant did not have appropriate timekeeping methods in place to track time, and that it condoned the practice of allowing hourly employees to work more than forty hours per week without proper compensation. This showing, while perhaps modest, suggests that the Nashville Sales Account Representatives "suffer[ed] from, a single, FLSA-violating policy," O'Brien, 575 F.3d at 585, and is sufficient for conditional certification. See Simpson v. Caresouth Hha Holdings, LLC, 2016 WL 3349637, at *3 (M.D. Tenn. June 16, 2016) (modest factual showing for conditional certification met where three plaintiff "submitted declarations stating that, as RNs working for CareSouth, they were paid with a combination of 'per visit' fees and hourly wages but were never compensated for any time that they worked more than 40 hours in a week," and where they "stated that other 'nurses and

6

home health workers' working out of the same offices as the plaintiffs were compensated 'in the same way'"); Young v. Hobbs Trucking Co., Inc., 2016 WL 3079027, at *3 (M.D. Tenn. June 1, 2016) (modest factual showing met where plaintiff submitted pay stubs and a "declaration stating that, as a dump truck driver for the defendants until March of 2015, he was paid at a flat rate of $115 per day and was never compensated for any time that he worked more than 40 hours in a week," and where he claimed to be "'personally aware' that other employees of the defendants were paid in the same manner in which he was paid and that the defendants failed to pay these other employees overtime wages"); Loveland-Bowe v. Nat'l Healthcare Corp., 2016 WL 1625820, at *1 (M.D. Tenn. Apr. 25, 2016) (sufficient basis for conditional certification found where plaintiff and another employee submitted declarations stating that "given all the duties required of them as home health LPNs, they ha[d] to complete necessary paperwork and forms for patients at home after work," they were told they would not be paid for work done at home and were instructed not to record it, and such work "was both unrecorded and uncompensated per corporate policy").

## III.

Together with its Motion for Conditional Certification, Plaintiffs submitted a proposed Notice and Consent Form, which generally tracks notices that have been approved by this Court in the past. In response, Defendant "strenuously objects to Plaintiffs' proposed notice and opt-in form," arguing that (1) nothing more than the names and addresses of putative class members is necessary, (2) notice should be sent by mail, but not by email or included with paychecks, and (3) a notice period of 45 or 60 days is appropriate, rather than the 90-day period proposed by Plaintiffs. (Docket No. 37 at 10-11). Defendant further submits that "[i]n the event the Court grant Plaintiffs' motion and conditionally certifies the class," it be granted "14 days in which to consult with

Plaintiffs' counsel in an effort to draft an Notice and Consent Form that is agreeable to all parties." (Id. at 10).

While Plaintiffs cite authority supporting the various nuances in their Proposed Notice and Consent Form, it makes sense that the parties be allowed an opportunity to negotiate the language in those documents now that the Court has decided to conditionally certify this as a collective action. The parties should make every effort to agree on the proposed Notice and Consent Forms and not squander this opportunity because it unlikely that the Court will meld competing notices, rather than choose one form over the other.

**IV.**

Plaintiffs request that the statute of limitations be equitably tolled. This is a moving target because, in their Motion, they request tolling "until the close of the opt-in period provided in the Notice," (Docket No. 26 at 3); in their Memorandum, they request tolling "pending the final disposition of Plaintiffs' Motion" (Docket No. 27 at 3); and, in their reply, they request "equitable tolling as of the date Plaintiffs filed their initial Motion for Conditional Certification, or at least as of when Plaintiffs filed their Reply in support thereof" (Docket No. 45 at 6).

As Defendants correctly observe, Plaintiffs, in their supporting Memorandum, "make no effort to demonstrate that any test for application of tolling is met." (Docket No. 37 at 9). As Defendant also correctly notes, the Supreme Court recently reiterated "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 755 (2016) (quoting, Holland v. Florida, 560 U.S. 631, 649 (2010)). These are "distinct

elements," both of which must be shown by the party seeking equitable tolling. Id.

In their reply, Plaintiffs ignore Menominee Tribe and rely instead on the Sixth Circuit decision in Hughes v. Region VII Area Agency on Aging, 542 F.3d 169 (6th Cir. 2008), which cites five factors that are to be considered in determining whether equitable tolling should be applied. Those factors are: "'(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." Id. at 187 (quoting Barry v. Mukasey, 524 F.3d 721, 724 (6th Cir.2008)).

Without any amplification, Plaintiffs argue that "[a]ll five factors identified in Hughes weigh in favor of equitable tolling on behalf of the putative opt-in plaintiffs in this case." (Docket No. 45 at 6). They also cite three cases for the proposition that "[c]ourts in the Middle District regularly grant equitable tolling in FLSA actions." (Id. at 5).

While it is true that the statute of limitations is sometimes tolled in FLSA cases, it is not automatic. For example, in one of the cases on which Plaintiffs rely, Thompson v. Direct General Consumer Products, Inc., 2014 WL 884484 (M.D. Tenn. March 15, 2014), this Court tolled the limitations period as to one group of employees, but not to the other group, noting that "[e]quitable tolling enables a court, in its discretion, to extend the statute of limitations on a case-by-case basis to prevent inequity." See Awad v. Tyson Foods, Inc., 2016 WL 454776, at *6 (M.D. Tenn. Feb. 5, 2016) (refusing to apply group-wide tolling in an FLSA case noting that "[w]hether equitable tolling is appropriate is necessarily fact-specific"). Besides, it is incumbent on the party seeking equitable tolling to show that it is appropriate. Menominee Tribe, 136 S. Ct. at 755; Jackson v. United States,

9

751 F.3d 712, 718 (6th Cir. 2014); Engleson v. Unum Life Ins. Co. of Am., 723 F.3d 611, 624 (6th Cir. 2013). Plaintiffs' unadorned say-so has no persuasive value.

Still, "Congress did not explicitly remove [a] courts' ability to equitably toll the statute of limitations," and "'[t]he decision to invoke equitable tolling in a particular case, therefore, lies solely within the discretion of the trial court.'" Fenley v. Wood Grp. Mustang, Inc., 2016 WL 1059681, at *8 (S.D. Ohio Mar. 17, 2016) (citation omitted); see Gordon v. England, 612 F. App'x 330, 334 (6th Cir. 2015) ("We review a district court's equitable-tolling decision for an abuse of discretion"); Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010) ("'[W]here the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the de novo standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard.'").

Because "the filing of the written consent 'commences' an FLSA collective action" for purposes of the statute of limitations, Frye v. Baptist Mem. Hosp., Inc., 495 F. App'x 669, 675 (6th Cir. 2012), the Court finds it equitable to toll the limitations period as of February 29, 2016, the date Plaintiffs filed their reply brief in support of their Motion for Conditional Class Certification. This was the approach the Court took for the other set of Plaintiffs in Thompson. There, the Court rejected the request to toll as of the date Plaintiffs filed their conditional-certification motion because "even in the best case scenario . . . the earliest the Court could have conditionally certified the class is some time after the parties fully briefed the motion" and "[t]he FLSA clock certainly would not have stopped running before then." 2014 WL 884484, at *10. This approach, the Court ruled, "more closely comports with the regular course of litigation and reflects the lapse of time that the FLSA's opt-in mechanism necessarily involves." Id.

## V.

On the basis of the foregoing, the Court will conditionally certify this matter as a collective action, but will provide the parties an opportunity to explore the possibility of an agreed notice for the opt-in plaintiffs and the consent forms. Further, the Court will toll the statute of limitations as of February 29, 2016.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE